[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 30, 1999, this court issued a Memorandum of Decision in which it adjudicated Alpha J. as a neglected child in that he was "permitted to live under conditions, circumstances, or associations injurious to his well being and had been denied proper care and attention, physically and emotionally." Conn.Gen. Stat. § 46b-120 (8)(B)(C). The court found by a preponderance of the evidence that Alpha had been the direct victim of domestic violence at the hands of his father, James, and had also been in the home when his mother, Joan, was subjected to domestic violence. CT Page 1551
Prior to the dispositional phase of the trial, the court ordered that psychological evaluations be done on the parents and Alpha to help the court determine what was in Alpha's best interest. The evaluator was asked to address whether it was in Alpha's best interest to leave him with his mother, whom he clearly loves, or to remove him from the home.
The court held a dispositional hearing on January 21, 2000. During the dispositional phase of this trial, DCF requested, based on the evaluations performed by Dr. Jill Edgar, that Alpha not be removed from his home. Instead, the Department sought an order of protective supervision.
Contrary to the statement made by mother's attorney during his closing argument, no evidence was presented that leads the court to question its earlier finding of domestic violence in this home. Instead, James impressed Dr. Edgar as a person who dominated his wife intellectually and emotionally and who controlled her actions. Joan presented as a tense, constricted person who is highly motivated to seek approval from authority figures and is somewhat depressed and passive. James' domineering behavior toward his wife throughout the trial further support the court's findings.
After reviewing all of the evidence presented during the adjudicatory and dispositional phases of this case, the court finds by a preponderance of the evidence that it is in Alpha's best interest to remain in the care and custody of his parents under an Order of Protective Supervision for a period of six months from the date of this decision.
As part of the Order of Protective Supervision, the court orders the following steps with regard to the respondent parents:
1. Cooperate with visits by the child's attorney and provide access to the child to talk with his attorney alone. The child's attorney is ordered to meet with the child a minimum of two times during the period of protective supervision.
2. Keep the child's whereabouts and your whereabouts known to DCF, your attorney, and the attorney for the child.
3. Participate in counseling and make progress toward the identified treatment goal of eradicating domestic violence in the CT Page 1552 home. The counseling service can be chosen by the parents but must be approved by this court. The name of the chosen counselor is to be provided to the court within two weeks of the date of this decision and the court will notify the parties of its approval or disapproval forthwith.
4. Alpha is to be evaluated by a counselor from the Child Guidance Center in Bridgeport and is to attend sessions with his counselor as often as the counselor deems appropriate during the period of protective supervision.
5. The respondents are to consistently and timely meet and address the child's physical, educational, medical or emotional needs, including, but not limited to, keeping the child's appointments with his medical, psychological, psychiatric or educational providers.
6. Sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress toward identified goals.
7. Maintain the child within the State of Connecticut during the duration of this order.
DCF is ordered to:
1. Take all necessary measures to ensure the child's safety and well being. To the extent that DCF receives any further referrals on this family, the referrals shall be promptly investigated and if neglect or abuse is substantiated the department should not wait eight months to take appropriate action.
2. Refer the respondents to appropriate services.
3. Monitor the welfare of the child and the circumstances surrounding his care by the respondents. Given the extreme tension between the department and the respondents, and concerns that this court has regarding how this case was initially mishandled, DCF is not to visit the home of respondents unless a new referral is received. Instead, DCF is to monitor the welfare of the child by communicating with the child's attorney and the counselors for the parents and Alpha.
It is so Ordered. CT Page 1553
CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT